**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KEITH GANT                                          :
          *Plaintiff,*

          v.                                        :          CIVIL ACTION
                                                               NO. 19-0043
WARDEN SEAN MARLER;                                 :
MRS. KNOX; MR. JAMISON;
MICHAEL CARROLL; and,
MARISSA NASH                                        :
          *Defendants.*                             :


**<u>MEMORANDUM</u>**

**JONES, II     J.**                                          **September 28, 2020**

**I.       INTRODUCTION**

          Plaintiff Keith Gant commenced this action against Defendants, asserting various

constitutional claims predicated upon conditions at the Federal Detention Center in Philadelphia

(hereinafter "FDC"), where Gant was previously confined.[1] Upon Plaintiff's second amendment

of his Complaint (hereinafter "SAC"), Defendants filed the instant Motion to Dismiss under

Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all counts.  For the reasons set

forth below, Defendants' Motion shall be granted in part and denied in part.

---

[1] Specifically, Plaintiff's claims consist of allegations of cruel and unusual punishment in
violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as
well as 42 U.S.C. § 1983. (2d Am. Compl. ¶ 32.)

## II.      BACKGROUND

### A.      Factual

At all times relevant hereto, Gant was incarcerated as a pretrial detainee at the FDC. (2d Am. Compl. ¶ 8.) On or about April 18, 2016, Gant was placed in the Special Housing Unit (hereinafter "SHU")[2] on the basis of being under investigation for possession of a government document.  (2d Am. Compl. ¶ 9.)  Plaintiff subsequently received an incident report and believed he was "sentenced" to a period of disciplinary segregation in the SHU as a result thereof.  (2d Am. Compl. ¶ 10.)  Upon completion of the disciplinary period, Gant was placed in administrative segregation in the SHU until approximately March of 2018. (2d Am. Compl. ¶ 11.) In addition to the SHU's standard hours of confinement, Gant ate meals alone, only had contact with BOP officials, and was prohibited from participating in any educational, vocational, or other organizational activities. (2d Am. Compl. ¶¶ 12-13.) According to the SAC, this prolonged confinement caused serious mental health issues. (2d Am. Compl. ¶ 14.)[3]

---

[2] Placement in the SHU typically involves total isolation in a small cell separate from the general prison population for 23 hours a day, 5 days a week, and often 24 hours on weekends.  (2d Am. Compl. ¶ 12.)

[3] Plaintiff alleges that his mental health issues included depression, bouts of suicidal ideation, high levels of anxiety, severe difficulty concentrating, short-term memory loss, unfathomable emotional pain and suffering, agoraphobia, and periods of insomnia. (2d Am. Compl. ¶¶ 14-15.) The SAC makes no allegations of any specific physical injury. This Court notes that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code)."  42 U.S.C.S. § 1997e.  Nevertheless, the Third Circuit has determined "that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm." *Aponte v. Karnes*, Civil No. 4:CV-08-183, 2008 U.S. Dist. LEXIS 9675, at *6 (M.D. Pa. Feb. 8, 2008) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000)).

B.      **Procedural**

Prior to filing this lawsuit, Gant utilized the Bureau of Prisons' (hereinafter "BOP")

administrative procedures and exhausted his administrative remedies. (2d Am. Compl. ¶ 28). On

January 4, 2019, Plaintiff filed a *pro se* civil action against all current Defendants and one

additional defendant, Jeffrey Nash (hereinafter "Nash"), challenging his incarceration in the

SHU for almost two years. (ECF No. 2.) Plaintiff's first Complaint was dismissed without

prejudice as to all defendants except Nash. (ECF No. 7.) Plaintiff was granted leave to file an

Amended Complaint. (ECF No. 7.) On February 28, 2019, Plaintiff filed a *pro se* Amended

Complaint. (ECF No. 8.) Thereafter, two attorneys entered their appearance on Plaintiff's behalf

and were granted leave to file the instant SAC. (ECF No. 15.) Plaintiff's SAC challenges his

incarceration conditions in the SHU for approximately two years, and names five defendants, all

in their individual capacity.[4] (2d Am. Compl. ¶ ¶  2-7.)

Defendants filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff filed a Response thereto (EFC No. 26) and Defendants filed a Reply. (ECF No. 31.) The

matter is now ripe for review.

## III.    STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, district courts must first separate legal

conclusions from factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions should be

discarded, and well-pled facts given the deference of truth. *Id*. at 210-211. Courts must then

determine whether the well-pleaded facts state a "plausible claim for relief." *Id*. at 211.

---

[4] Defendants include: (1) Warden, Sean Marler; (2) Assistant Warden, Mrs. Knox; (3) Assistant
Warden, Mr. Jamison; (4) Executive Assistant, Michael W. Carroll; and, (5) FDC Attorney,
Marissa Nash. (2d Am. Compl. ¶¶  2-7.)

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 231). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Eighth Amendment Claim

The Eighth Amendment's Cruel and Unusual Punishment Clause does not apply until "after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). Plaintiff acknowledged that at all relevant times, he was a pretrial detainee and had yet to be sentenced; therefore, Plaintiff concedes that his claims are not recognized under the Eighth Amendment. (Pl.'s Resp. Mot. Dismiss 4.) Accordingly, Plaintiff has failed to state an Eighth Amendment claim and the same shall be dismissed.

### B. Fourteenth Amendment Claim

The Fourteenth Amendment "only applies to actions of the states and not to the federal government." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Plaintiff concedes the conduct of federal officials is not governed by the Fourteenth Amendment; therefore, he is not entitled to relief under the Fourteenth Amendment. (Pl.'s Resp. Mot. Dismiss 6-7.)

Accordingly, Plaintiff has failed to state a Fourteenth Amendment claim and the same shall be dismissed.

### C. Fifth Amendment Claims

#### 1. Procedural Due Process

Plaintiff's SAC does not state whether his rights have been violated under the procedural or substantive due process clause of the Fifth Amendment. (2d Am. Compl. ¶¶ 22, 26); *see also* Pl.'s Resp. Mot. Dismiss 2.  Plaintiff alleges Defendant Warden Marler deprived him of due process by failing to notify him of any rationale or hearing related to his continued confinement in the SHU on administrative segregation. (2d Am. Compl. ¶ 22.)

"Although pretrial detainees do not have liberty interests in being confined in the general prison population, they do have liberty interests in not being detained indefinitely in the SHU without explanation or review of their confinement." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007). *See also Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d. Cir. 2018) (same). Due process is flexible; the necessary procedural protection required for "administrative transfers of pretrial detainees need not be extensive" as the government's interest in maintaining security is substantial. *Stevenson*, 495 F.3d at 70.

The Supreme Court has held:

> [W]hen an individual is transferred to administrative segregation because he is "feared to be a threat to institutional security," detention officials must provide only an informal, non-adversary evidentiary review . . . for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation . . . So long as this occurs, and the decisionmaker reviews the charges . . . the Due Process Clause is satisfied.

5

*Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (quoting *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)). *See also Stevenson*, 495 F.3d at 70 (stating "prison officials must provide detainees who are transferred into more restrictive housing for administrative purpose only an explanation of the reason for their transfer as well as an opportunity to respond.").

Additionally, the Supreme Court mandates that that these informal reviews occur "within a reasonable time following an inmate's transfer." *Steele*, 855 F.3d at 507. *See also Kanu v. Lindsey*, 739 F. App'x 111, 117 (3d Cir. 2018) (holding that informing a plaintiff of the reasoning behind the transfer within two weeks, constitutes notice within a reasonable time). Further, the Third Circuit has determined that a pretrial detainee's opportunity to respond, "can be satisfied by written grievances." *Kanu*, 739 F. App'x at 117 (quoting *Hewitt*, 459 U.S. at 476).

Plaintiff herein alleges he was not provided any rationale for his continued placement in the SHU on administrative segregation, nor notice of hearings and the ability to call witnesses. (2d Am. Compl. ¶ 22). Consistent with Third Circuit precedent, as a pretrial detainee being transferred into the SHU on administrative segregation, Plaintiff's due process need not be extensive and requires only an explanation of the reason and an opportunity to respond. *Stevenson*, 495 F.3d at 69; *Steele*, 855 F.3d at 506- 507. Plaintiff admits that he was placed in the SHU on April 18, 2016 and informed by prison officials that his SHU placement was due to an investigation into his possession of a government document. (2d Am. Compl. ¶ 9). Plaintiff also admits that he received an incident report sentencing him to a period of disciplinary segregation in the SHU and had an informal counseling meeting to discuss. (2d Am. Compl. ¶ 10; Mot. Dismiss, Ex. D 3-4.)[5] Thereafter, on May 5, 2016, a prison official informed Plaintiff he would

---

[5] Exhibit D of Defendants' Motion consists of official prison documents regarding Plaintiff's grievances. "[A] motion to dismiss under Rule 12 is not converted to a motion for summary judgment under Fed.R.Civ.P. 56 if the defendant attaches an 'undisputedly authentic document

not return to general population, as he was a threat to security, thus providing internal security as a reason for his transfer to administrative segregation. (Mot. Dismiss, Ex. D 3.) On May 9, 2016, Plaintiff filed a request for an administrative remedy. (Mot. Dismiss, Ex. D 3.) On July 1, 2016, Plaintiff received a formal response from the previous Warden of the FDC, stating there was "a legitimate concern regarding safety and security issues regarding [Plaintiff's] placement in general population." (Mot. Dismiss, Ex. D 2.) Plaintiff filed another administrative remedy request and received additional explanations for his continued confinement. (Mot. Dismiss, Ex. D 2.) Plaintiff appealed to the Regional Director and the Administrator of National Inmate Appeals, respectively, and received an explanation outlining the reasons for his continued placement in the SHU. (Mot. Dismiss, Ex. E 1, 4.) In contrast to *Stevenson*, where the plaintiffs alleged they were transferred without an explanation, Plaintiff was repeatedly informed that the reason he would remain in the SHU on administrative segregation was that he posed a threat to security. *Stevenson*, 495 F.3d at 71. Additionally, comparable to *Steele*, where the plaintiff was transferred into the SHU on administrative segregation due to security concerns resulting from his involvement in a bail scheme, Plaintiff posed a security threat due to his involvement in the possession of a government document. As such, Plaintiff was due the same level of process as in *Steele*: notice of the charges and an opportunity to be heard. *Steele*, 855 F.3d at 508.

Thus, consistent with *Steele* and *Stevenson*, Plaintiff's due process was satisfied, as he received notice of the charges against him (evident via the incident report) and an explanation

---

… if the plaintiff's claims are based on the document.' Moreover, the court may always accept matters of public record." *Fortier v. U.S. Steel Corp.*, No. 01-CV-2029, 2002 WL 1797796, at *1 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *Am. Corp. Soc. v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88-89 (3d Cir. 2011). Inasmuch as Plaintiff's claims are based upon these indisputably authentic documents, they are properly considered by the court.

from prison officials (evident via the statement made by a prison official to Plaintiff on May 5, 2016 and the formal administrative remedy responses). *Steele*, 855 at 506-507; *Stevenson*, 495 F.3d at 71; (2d Am. Compl. ¶ 10; Mot. Dismiss, Ex. D 1-4). Additionally, Plaintiff was provided an opportunity to respond via written grievances in the form of multiple administrative remedy requests. *Kanu*, 739 F. App'x at 117; (Mot. Dismiss, Ex. D 2-4). Lastly, Plaintiff was put on notice within a "reasonable time" following his transfer to administrative segregation. In *Kanu*, the Third Circuit held that a plaintiff was provided notice within a "reasonable time" as he was informed within approximately two weeks of his transfer from disciplinary segregation to administrative segregation, that the transfer was due to the threat he posed on internal security. *Kanu*, 739 F. App'x at 117. Similarly, Plaintiff was placed in the SHU on April 18, 2016, and was notified on May 5, 2016, that he was to remain in the SHU on administrative segregation as he posed a threat to security, thus he was put on notice within a "reasonable time." (2d Am. Compl. ¶ 9; Mot. Dismiss, Ex. D 3); *Kanu*, 739 F. App'x at 117. Therefore, any procedural due process claim Plaintiff might have intended to raise must be dismissed for a failure to state a claim upon which relief can be granted.

### 2.  Substantive Due Process

As noted above, Plaintiff's SAC alleges that his continued placement in the SHU on administrative segregation violated his due process rights. (2d Am. Compl. ¶ 22.) The Due Process Clause prohibits the punishment of pretrial detainees prior to an adjudication of guilt. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. 2019) (stating "[u]nder the Due Process Clause, the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee."); *Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005)

(stating the "proper standard" for determining the due process rights of a pretrial detainee is whether the "conditions of confinement…amounted to punishment prior to an adjudication of guilt[].").  The prohibited "punishment" in *Bell* referred to that "of a pretrial detainee for his alleged criminal conduct, committed prior to his detention, for which he has not yet been convicted." *Steele*, 855 F.3d at 504. Nevertheless, the Third Circuit has adopted the First Circuit's determination in *Collazo-Leon v. U.S. Bureau of Prisons* "that the 'theoretical constitutional premises of *Bell's* analysis provides some rational guidance' for evaluating claims involving in-facility conduct that could warrant disciplinary action." *Steele v. Cicchi*, 855 F.3d 494, 505 (3d Cir. 2017) (quoting *Callazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 317-18 (1st Cir. 1995)); *See also Kanu*, 739 F. App'x at 116 (stating "[p]risons may sanction a pretrial detainee for misconduct that he commits . . . as long as it is not punishment for the underlying crime of which he stands accused.").

Adhering to *Bell*, the Third Circuit has held:

> [D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose."

*Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson*, 495 F.3d at 67-68).

In *Steele*, a pretrial detainee claimed his transfer to the SHU on administrative segregation constituted punishment violating his substantive due process rights. *Steele*, 855 F.3d at 505. After noting that Steele's administrative segregation was due to the possible threat he posed to internal security, the court held that the prison had a legitimate governmental objective

9

in transferring and continuing to place him in the SHU on administrative segregation for one month. *Id*. at 505-06. The Third Circuit reiterated that the "Supreme Court repeatedly has emphasized that maintaining internal security and order in jails and prisons are 'legitimate governmental objectives' and that courts must give prison officials considerable discretion to manage internal security in their institutions." *Steele*, 855 F.3d at 505 (quoting *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995)). *See also Stevenson*, 459 F.3d at 69 (holding that generally "a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern . . . will typically foreclose the substantive due process inquiry."); *Hubbard*, 399 F.3d at 159 (quoting *Bell*, 441 U.S. at 540) (The Court "warns that such considerations are peculiarly within the province and professional expertise of correction officials, and, absent substantial evidence that officials have exaggerated their response… courts should typically defer to their expert judgment.").

In contrast to *Bistrian v. Levi*, where a prison official told the plaintiff he would "never see the light of day again[,]" and *Parkell v. Morgan*, where a prison official told the plaintiff he would "suffer consequences[,]" the instant SAC does not include any facts to plausibly show an express intent on the part of any Defendant to punish Plaintiff. (2d Am. Compl. ¶ 22.); *Bistrian v. Levi*, 912 F.3d 79, 86 (3d. Cir. 2018); *Parkell v. Morgan*, 682 F. App'x 155, 158 (3d Cir. 2017). Thus, Plaintiff's substantive due process claim shall be analyzed under the second and third tiers of the test outlined in *Steele*.

Preliminarily, the court must determine if Defendants had a "legitimate governmental objective" in continuing to hold Plaintiff in the SHU on administrative segregation. *Steele*, 855 F.3d at 505.  Plaintiff concedes that a prison official informed him on May 5, 2016, that he was to remain in the SHU on administrative segregation, as he posed a threat to security. (Mot.

Dismiss, Ex. D 3.) As in *Steele*, where an investigation into the plaintiff's threat to security resulted in administrative segregation and a legitimate governmental interest, Plaintiff herein was also under investigation for posing a security threat. *Steele*, 855 F.3d at 505-506. Adhering to the Court's warning in *Bell*, and consistent with *Steele* and *Stevenson*, Plaintiff's continued placement in the SHU on administrative segregation was predicated upon the legitimate governmental objective of maintaining internal prison security. *Steele*, 855 F.3d at 505; *Stevenson*, 459 F.3d at 70. Therefore, this alone does not constitute punishment prohibited by the Due Process Clause.

Nevertheless, the SAC appears to allege that even if Plaintiff's prolonged placement in the SHU was related to a legitimate governmental objective, Defendants actions were excessive in light that objective. (2d Am. Compl. ¶¶ 23-24, 27.) The Due Process Clause does not require prison "officials to use the least restrictive means available[.]" *Steele*, 855 F.3d at 506. However, "[a] court weighing a pretrial detainee's substantive due process claim must [] consider whether the conditions of confinement were 'reasonably related' to the stated objective, or whether they were 'excessive' in relation thereto." *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018) (quoting *Bell*, 441 U.S. at 539). This analysis requires an "inquiry into whether [] conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes[.]" *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008). The Third Circuit has held that in conducting an "excessiveness analysis," courts must look at the "totality of conditions," including the "size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Hubbard*, 538 F.3d at 233.

As alleged in the SAC, Plaintiff's continued confinement in the SHU for nearly two years could plausibly be deemed an excessive response to a legitimate governmental purpose, and thus constitute punishment prohibited by the Due Process Clause.[6] In contrast to *Steele*, where the plaintiff was held in the SHU for only one month with ongoing evidence supporting the claim that he posed a threat to security, Plaintiff herein was held in the SHU for nearly two years, based upon an isolated event two years prior with no supporting evidence of any ongoing threat. (2d Am. Compl. ¶¶ 11-12); *Steele*, 855 F.3d at 506. Additionally, the facts alleged in the SAC are distinguishable from *Mackey v. Smith*, where a prisoner's two-year placement in the SHU was not considered excessive due to his continued refusal to participate in a program that taught inmates how to co-exist and for various other misconducts reported during his time in the SHU. *Mackey v. Smith*, 249 F. App'x 953, 955 (3d Cir. 2007). In contrast, Plaintiff was held in the SHU for nearly two years as a potential security threat based solely upon a single incident from two years prior. (2d Am. Compl. ¶¶ 12, 18-19.) *See also Williamson*, 912 F.3d at 179 (determining a jury could reasonably conclude that a three-and-a-half-year placement in the SHU, with minimal human contact, due to a single incident with unrepeated threats, was excessive compared to the prison's security interest and thus constituted prohibited punishment); *Abdullah v. Carney*, No. 19-CV-5988, 2020 WL 3265143, at *5 (E.D. Pa. June 17, 2020) ("vacating dismissal of a due process claim because it was reasonable to infer . . . that a twenty-day SHU placement for possession of [prohibited] items was excessive and, although the complaint also supported an inference that officials were acting to maintain security…the fact that both inferences could be drawn suggested dismissal was premature.") (quoting *Parkell*, 682

---

[6] *See* supra n.2.

F. App'x at 158). Accordingly, at this early stage of litigation, Plaintiff may proceed on a substantive due process claim.

### 3.   42 U.S.C. § 1983 and *Bivens*

42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution. *Brown*, 250 F.3d at 800. Under § 1983, an injured individual is entitled to "money damages if a state official violates his or her constitutional right." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). For federal officials, "[i]t is well established that liability under § 1983 will not attach for actions taken under color of federal law." *Brown*, 250 F.3d at 800.

While § 1983 protects against violations of constitutional rights at the hands of state officials, the Supreme Court has recognized, in limited situations, a private cause of action against federal officials. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown*, 250 F.3d at 800. *See also Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (stating "*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations."). In *Bivens*, a damages remedy was permitted "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar*, 137 S. Ct. at 1854.  The Court has extended *Bivens* to only two other constitutional violations. *Id*. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the Fifth Amendment Due Process Clause gave an administrative assistant a damages remedy

against a Congressman for firing her due to gender. *Ziglar*, 137 S. Ct. at 1854. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court held the Eighth Amendment Cruel and Unusual Punishment Clause gave a prisoner's estate a damages remedy against prison officials for failing to provide adequate medical treatment for asthma. *Ziglar*, 137 S. Ct. at 1854. *Bivens*, *Davis*, and *Carlson* are the only cases in which "the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1857. *See also Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (same); *Graber v. Dales*, Civil Action No. 18-3168, 2019 U.S. Dist. LEXIS 169594, at *5-6 (E.D. Pa. Sept. 30, 2019) (same).

The Court "established a rigorous inquiry" to determine whether a *Bivens* cause of action should be recognized in a new context. *Bistrian*, 912 F.3d at 89 (quoting *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017)). Courts determine whether a case presents a "new *Bivens* context" by asking if it is "different in a meaningful way" from previous *Bivens* extensions.[7] *Bistrian*, 912 F.3d at 90. *See also Ziglar*, 137 S. Ct. at 1864 (holding "even a modest extension is still an extension.") If the court finds it does, the court must ask whether "special factors counsel hesitation in permitting the extension." *Id*. The Supreme Court has not defined "special factors" but directs concentration to "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, S. Ct. at 1858. *See also Bistrian*, 912 F.3d at 90 (holding that two special factors are "particularly weighty: the existence of an alternative remedial structure and separation-of-powers principle.") Nevertheless, the Court "made it clear that expanding the

---

[7] Some examples include: "[R]ank of officers involved; the constitutional right at issue; the generality or specificity of the action; the extent of judicial guidance as to how an officer should respond…;the  risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 137 S. Ct. at 1860.

*Bivens* remedy is now a disfavored judicial activity[]" and urges "caution" before "extending *Bivens* […] into any new context." *Ziglar*, 137 S. Ct. at 1857. *See also Bistrian*, 912 F.3d at 94 (refusing to extend *Bivens* to a pretrial detainee alleging that periods of a 447-day punitive detention placement in the SHU violated his substantive due process rights under the Fifth Amendment).

Plaintiff concedes 42 U.S.C. § 1983 does not explicitly apply, as all Defendants are federal officials, thus a *Bivens* analysis is required. (Pl.'s Resp. Mot. Dismiss 2.) Plaintiff's Fifth Amendment due process claim constitutes a new *Bivens* context, as it is meaningfully different than previous *Bivens* extensions. Specifically, Plaintiff herein requests that this Court extend *Bivens* to a Fifth Amendment due process claim involving a pretrial detainee's right to be notified of, and participate in, hearings held in regard to their continued placement in restrictive housing. (2d Am. Compl. ¶ 22.) As such, even this modest extension upon which the claim is predicated, constitutes a new *Bivens* context under *Ziglar*. *See also Williams v. Kobayashi*, Civ. No. 1:18-cv-00336, 2018 U.S. Dist. LEXIS 180783, at *14 (D. Haw. Oct. 22, 2018) (determining that a pretrial detainee's "Fifth Amendment due process claims" presents a new *Bivens* context and refusing to extend *Bivens* as alternative remedies were sufficient) (quoting *Vega v. United States*, 724 F. App'x 536, 539 (9th Cir. 2018)); *Thomas v. Matevousian*, 1:17-cv-01592, 2018 U.S. Dist. LEXIS 179459, at *18 (E.D. Cal. Oct. 18, 2018) (determining that an inmate's Fifth Amendment due process claim presents a new *Bivens* context as "the Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process, or extended *Bivens* to a case involving the substantive and procedural clause of the Fifth Amendment."). In *Bistrian*, the Third Circuit

similarly held that a pretrial detainee's punitive detention claim, specifically under the Fifth

Amendment, constitutes a new *Bivens* context. *Id.*

       As such, this Court must next determine whether a "special factors analysis counsels

hesitation against extending *Bivens* to provide a remedy" for Plaintiff's Fifth Amendment due

process claim. *Bistrian*, 912 F.3d at 94. As in *Ziglar*, where the existence of alternative remedies

precluded a *Bivens* extension, Plaintiff herein had alternative options, including an injunction

against the warden to ensure prison compliance. *Ziglar*, 137 S. Ct. at 1865. Further, the BOP's

administrative remedy process was in existence and was utilized. (2d Am. Compl. ¶ 28.)

Nevertheless, the Third Circuit's holding in *Bistrian* precludes this Court from extending *Bivens*

to Plaintiff's punitive detention claim under the Fifth Amendment. *Bistrian*, 912 F.3d at 94. *See*

*also Johnson v. Loatman***,** Civ. No. 19-19174, 2020 U.S. Dist. LEXIS 51338, at *6-7 (D.N.J.

Mar. 25, 2020) (stating the "Third Circuit held that special factors, especially separation of

powers concerns, counsels against creating a new *Bivens* remedy for punitive detention within

the prison context under the Fifth Amendment, an area best suited to the executive branch.")

(citing *Bistrian*, 912 F.3d at 94-95). Accordingly, Plaintiff herein has failed to state a *Bivens*

claim and the same shall be dismissed.

## V.    AMENDMENT

       Federal Rule of Civil Procedure 15(a) permits amendment to pleadings with leave of the

court. *Fed. R. Civ. P. 15(a)*. However, leave should not be granted if "(1) an amendment would

be futile…; (2) the court finds bad faith or dilatory motive by the moving party; (3) an

amendment would cause prejudice to the non-moving party; or (4) the moving party has

demonstrated repeated failure to cure deficiency by amendments previously allowed." *Harris v.*

*Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (citing *Long v. Wilson*, 393 F.3d 390, 400

(3d Cir. 2004)). An amendment is futile if it "is frivolous or advances a claim [] that is legally insufficient on its face." *Harris*, 160 F. Supp. 3d at 817. Courts are permitted to deny amendment based on futility when an amended complaint "would fail to state a claim upon which relief could be granted." *Id.* As Plaintiff has already twice amended his Complaint and his claims are not recognized under the Eighth Amendment, Fourteenth Amendment, Fifth Amendment Procedural Due Process Clause, or 42 U.S.C. § 1983, those claims shall be dismissed with prejudice. Additionally, Plaintiff has failed to state a claim upon which relief could be granted under *Bivens*, and any attempt to amend would be futile, thus said claim shall be dismissed with prejudice.

**VI.      CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss shall be granted as to Plaintiff's Eighth Amendment claim, Fourteenth Amendment claim, Fifth Amendment Procedural Due Process claim, 42 U.S.C. § 1983 claim, and *Bivens* claim. Defendant's Motion shall be denied as to Plaintiff's Fifth Amendment Substantive Due Process claim.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II    J.

17